COURT OF APPEALS OF VIRGINIA

Present: Judges Malveaux, Athey and Callins

KEVIN O'NEAL ALLEN

v.      Record No. 0787-22-3

COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*]
PER CURIAM
JANUARY 24, 2023

FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
F. Patrick Yeatts, Judge

(Matthew L. Pack; M. Pack Law, PLLC, on brief), for appellant.
Appellant submitting on brief.

(Jason S. Miyares, Attorney General; Mason D. Williams, Assistant
Attorney General, on brief), for appellee.

Following his guilty pleas, the trial court convicted Kevin O'Neal Allen of second-degree

murder, use of a firearm during the commission of murder, malicious discharge of a firearm in an

occupied building, and two counts of felony child neglect. The trial court sentenced Allen to a total

of sixty-three years' imprisonment, with eighteen years suspended. On appeal, Allen argues that the

trial court abused its sentencing discretion. After examining the briefs and record, the panel

unanimously holds that oral argument is unnecessary because "the appeal is wholly without merit."

Code § 17.1-403(ii)(a); Rule 5A:27(a).

BACKGROUND

"In accordance with familiar principles of appellate review, the facts will be stated in the

light most favorable to the Commonwealth, the prevailing party at trial." *Poole v. Commonwealth*,

73 Va. App. 357, 360 (2021) (quoting *Gerald v. Commonwealth*, 295 Va. 469, 472 (2018)). In

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

doing so, we discard any of Allen's conflicting evidence, and regard as true all credible evidence favorable to the Commonwealth and all inferences that may reasonably be drawn from that evidence. *Gerald*, 295 Va. at 473.

On February 22, 2022, Allen pled guilty to second-degree murder, use of a firearm during the commission of murder, malicious discharge of a firearm in an occupied building, and two counts of felony child neglect.[1] The Commonwealth proffered that on September 17, 2020, Allen was at home with Cansas Crotts, the mother of his two children. Allen called the police that night, yelling that he had shot his wife and that he needed help. At the scene, officers found Crotts unresponsive with a gunshot wound to her eye, and medics pronounced her dead at the scene. Allen, a military veteran who was trained in firearms, made several statements to police while detained, suggesting that Crotts had grabbed the gun from Allen when it went off. Hours before the incident, Crotts's mother spoke with Crotts on the phone and heard Allen yelling threats at Crotts, such as "if she tried to leave him, he would kill her." According to Crotts's mother, Allen "said he would kill [Crotts] five or six times during this conversation."

During a plea colloquy, Allen affirmed that, among other things, he understood the maximum punishment for the offenses and that the court was not required to follow any applicable sentencing guidelines. Allen also confirmed that he had read and signed a written plea agreement. He had also read and signed a similar form in which he acknowledged that there was no agreement as to sentencing and he faced a "maximum of 63 years in the penitentiary." The trial court accepted Allen's pleas as freely, voluntarily, and intelligently made. Based on his pleas, the trial court found Allen guilty of second-degree murder, use of a firearm during the commission of murder, malicious discharge of a firearm in an occupied building, and two counts of felony child neglect.

---

[1] In exchange for Allen's guilty pleas, the Commonwealth agreed to reduce the charge of first-degree murder to second-degree murder.

- 2 -

At the sentencing hearing, Allen testified on his own behalf. Allen acknowledged that he had two firearms in his home on the day of the incident. Allen explained that on the night in question, he and Crotts were in bed with their children when they heard a "loud bang." Allen leaned over and "got the AK." Allen then "jumped up" and "that's when [Crotts] hit the gun and that's when it went off." Allen testified that he did not intentionally injure Crotts.

The trial court made the presentencing report a part of the record. The presentencing report noted that the low end of the discretionary sentencing guidelines had been adjusted downward because Allen accepted responsibility for the crime. The adjusted guideline range was seven years, one month and fifteen days to twenty-three years and ten months' imprisonment. Maintaining that it was an accident, Allen asked the trial court to impose a sentence "toward the lower end of his guidelines." The Commonwealth asked the trial court to sentence Allen to the maximum punishment of sixty-three years' imprisonment, or "at the very least, a slight upward departure from the high end" of the guidelines, based on Allen's actions and the severity of the crime.

After considering the evidence and argument by counsel, the trial court sentenced Allen to a total of sixty-three years' imprisonment, with eighteen years suspended. The trial court found that the sentencing guidelines were inadequate. The trial court acknowledged that Allen accepted responsibility for the offenses, but also found that he "then shift[ed] the responsibility to convince [the trial court] that this was some sort of accident" and noted that "[Allen's] explanation defi[ed] the evidence." The trial court highlighted Allen's experience with firearms, the violence of Allen's actions, as well as the threats Allen made before committing the violent actions. The trial court cited the need to protect the public and the need to "prevent[] the harm that [Allen] possibly could do" to others. The trial court ultimately found that Allen committed "a violent, intentional act" and the discretionary sentencing guidelines were not "appropriate under the facts and circumstances of

this case." The trial court explained its departure from the guidelines by stating that this matter involved a "very violent murder by a very dangerous individual."

ANALYSIS

On appeal, Allen argues that the trial court abused its discretion by sentencing him to an active term of incarceration of forty-five years. "Criminal sentencing decisions . . . are vested in the sound discretion of trial judges, not appellate judges." *Minh Duy Du v. Commonwealth*, 292 Va. 555, 563 (2016). "A Virginia trial court 'clearly' acts within the scope of its sentencing authority 'when it chooses a point within the permitted statutory range' at which to fix punishment." *Id.* at 564 (quoting *Alston v. Commonwealth*, 274 Va. 759, 771 (2007)). "Consequently, 'when a statute prescribes a maximum imprisonment penalty and the sentence does not exceed that maximum, the sentence will not be overturned as being an abuse of discretion.'" *Id.* (quoting *Alston*, 274 Va. at 771-72). Once we have determined that a sentence was within the statutory limit, appellate review generally comes to an end. *Id.* at 565.

The Virginia criminal sentencing guidelines are discretionary, not mandatory. *West v. Dir. of Dep't of Corr.*, 273 Va. 56, 65 (2007). They are "merely procedural tools to assist and guide a judge in the exercise of the judge's sentencing discretion." *Luttrell v. Commonwealth*, 42 Va. App. 461, 468 (2004). Thus, in this case, "the [trial] court was required only to consider the sentencing guidelines before sentencing [appellant] and to file with the record of the case a written explanation of any departure from the indicated range of punishment." *West*, 273 Va. at 65. *See also* Code § 19.2-298.01(B).

Here, the record proves that the trial court considered the guidelines and the circumstances of the offenses, as well as Allen's history, conduct, and the need to protect the public. The trial court acknowledged Allen's claim that the incident resulted from an accident but emphasized that the physical and testimonial evidence did not support his claim. After

- 4 -

considering all the evidence and explaining its reasoning on the record, the trial court sentenced Allen within the statutory ranges set by the General Assembly. *See* Code §§ 18.2-10, 18.2-32, 18.2-53.1, 18.2-279, 18.2-371.1. The trial court considered the guidelines, declined to follow them, and explained in writing that it deviated from the guidelines because this was a "very violent murder by a very dangerous individual." It followed the procedure set out in Code § 19.2-298.01(B). Allen's sentence was "within the statutory range[s], and our task is complete." *Thomason v. Commonwealth*, 69 Va. App. 89, 99 (2018). There was no abuse of discretion.

## CONCLUSION

The trial court did not abuse its discretion by deviating from the sentencing guidelines and imposing a sentence within the statutory maximum ranges. Accordingly, the trial court's decision is affirmed.

*Affirmed*.